UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                                                  Case No. 07-CR-177

MICHAEL McGEE, JR.,

        Defendant.

**DECISION AND ORDER DENYING HEARST-ARGYLE TELEVISION, INC.'S MOTION TO INTERVENE**

## I. BACKGROUND

On May 26, 2007, the United States filed a complaint charging the defendant, Michael McGee, Jr., ("McGee"), with engaging in acts of extortion and bribery while serving as an alderman for the City of Milwaukee, in violation of 18 U.S.C. §§ 666 and 1951.

Sometime thereafter, McGee applied under the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006(A), for government funding of his attorney's fees and legal expenses. In order to demonstrate his CJA eligibility, McGee completed the CJA Form 23, a standard "financial affidavit" signed under penalty of perjury. The CJA Form 23 requires a defendant to provide "comprehensive financial data, including any employment income of the defendant and his or her spouse; all other income, cash and property; identification of the defendant's dependents; and all obligations, debts, and monthly bills." *Boston Herald, v. Connolly*, 321 F.3d 174, 177 (1st Cir. 2003). In compliance with standard procedure, McGee filed the CJA Form 23 with the United States Probation Office/Office of Pretrial Services.

Under the CJA, "anyone who is 'financially unable to obtain adequate representation'" may apply for court assistance. *Boston Herald*, 321 F.3d at 178 (citing 18 U.S.C. § 3006A(a)). "Guidelines promulgated by the Administrative Office of the United States Courts have elaborated on this terse statutory definition, by stating that [the CJA] applies to a defendant whose 'net financial resources and income are insufficient to enable him to obtain qualified counsel' and that the court should consider 'the cost of providing the person and his dependents with the necessities of life.'" *Id.* (citing VII Admin. Office of U.S. Courts, *Guide to Judiciary Policies and Procedures* § 2.04 (2001)). The CJA does not require a defendant to be indigent in order to receive assistance, but rather, requires that a defendant be unable to afford adequate representation. *Id.* Based upon these definitions and requirements and McGee's CJA Form 23, a pretrial services officer recommended to a judge that McGee have an attorney appointed for him. That judge, thereafter, approved the appointment of counsel for McGee.

On July 23, 2007, Hearst-Argyle Television, Inc. ("Hearst") filed a motion to intervene in this criminal proceeding so that it might enforce its claimed First Amendment and common law right of access to McGee's financial affidavit. On July 31, 2007, in response to Hearst's motion to intervene, McGee filed a motion to seal any and all documentation relating to his application for counsel under the CJA. During a scheduling conference on August 1, 2007, this court denied the motion to seal, finding such action unnecessary as McGee's financial affidavit was not part of the public record and could not be released from pretrial services without a court order. An order denying the motion to seal was filed on August 2, 2007.

On August 10, 2007, McGee filed a response opposing Hearst's motion to intervene. In his response, McGee argues, *inter alia*, that Quarles and Brady, LLC ("Quarles") is disqualified from

representing Hearst. On the same date, the government filed a response to Hearst's motion to intervene but took no position as to the appropriate course of action the court should take. On August 15, 2007, Hearst filed its reply. Thus, Hearst's motion to intervene is fully briefed and is ready for resolution. For the reasons that follow, Hearst's motion to intervene will be denied.

## II.  DISCUSSION

**A. Quarles does not have a conflict of interest preventing it from representing Hearst in this proceeding.**

As a preliminary matter, McGee asserts that Quarles is barred from representing Hearst in this proceeding by virtue of the fact that K.H., who is scheduled to begin working as an associate attorney for Quarles in September 2007, has been working during the summer of 2007 as an intern with Federal Defender Services of Wisconsin, Inc. ("FDSW"), the entity appointed to represent McGee. Under a program created by Quarles, K.H.'s salary was paid by Quarles while K.H. worked as a summer intern at FDSW. Thus, McGee asserts that under the Wisconsin Rules of Professional Conduct, K.H. is associated with two firms: FDSW and Quarles. Moreover, according to McGee, K.H. has been privy to confidential information that is material both to the instant litigation concerning the CJA Form 23 as well as to McGee's criminal case in general. McGee believes that K.H. is disqualified from representing Hearst and that his disqualification is imputed to Quarles under WIS. SCR 20:1.10. This court finds, however, that, although K.H. is disqualified from representing Hearst under WIS. SCR 20:1.9(a), K.H.'s disqualification will not become imputed to Quarles until September 2007, and, in any event, Quarles has rebutted any presumption of disqualification by instituting appropriate screening measures in anticipation of K.H.'s arrival at Quarles.

3

Ethical questions before this court are governed by both precedent and the precepts of the Model Rules of Professional Conduct promulgated by the American Bar Association ("ABA"). *Nelson v. Green Builders*, 823 F. Supp. 1439, 1443 (E.D. Wis. 1993). Ethical questions before a district court are governed by federal law. *Id.* (citation omitted). The standards applied, however, are not dissimilar to those applied by the Wisconsin Supreme Court. *Id.* (citing WIS. SCR 20:1.1., et seq.). On the whole, both court systems have adopted the Model Rules of Professional Conduct promulgated by the ABA. *Id.* (citation omitted). Therefore, this court may look to the Wisconsin Supreme Court Rules to determine whether Quarles is disqualified from representing Hearst in this proceeding.

In addressing McGee's assertion that Quarles is disqualified from representing Hearst, the court must first determine whether K.H. is disqualified from representing Hearst. Under WIS. SCR 20:1.9(a):

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing signed by the client.

Accordingly, because the FDSW states in its response that K.H. has been privy to confidential information regarding McGee's defense in this case, K.H. cannot represent another person/entity in this proceeding without McGee's written consent. Because McGee, presumably, has not provided such written consent, K.H. is disqualified from representing Hearst in this proceeding.

That K.H. may be disqualified from representing Hearst, however, does not necessarily mean that Quarles is likewise disqualified from representing Hearst. To begin, the doctrine of imputed disqualification does not currently apply in this case because K.H., who has been working solely

4

under the direction and control of FDSW, is not, *at least as of this time*, sufficiently "associated" with Quarles to impute his disqualification to the firm. Although the court notes that K.H. was compensated by Quarles while he worked for FDSW, such compensation was paid pursuant to a pro bono arrangement, whereby Quarles provided a public service to FDSW by paying an intern to work for FDSW. Moreover, the payment of such compensation was not contingent on the outcome of this case or on K.H.'s role in it. Consequently, K.H.'s disqualification will not become imputed to Quarles until such time as K.H. begins working as an associate for the Quarles firm.

However, were this matter to be still pending in September 2007 when K.H. begins as an associate at Quarles (as it undoubtedly will be), K.H.'s disqualification will be imputed to Quarles under WIS. SCR 20:1.10.[1] Nevertheless, Quarles can rebut the presumption of imputed disqualification provided that K.H. "performed no more than minor and isolated services in the disqualifying representation," is no longer associated with FDSW, "is timely screened from any participation in the matter and is apportioned no part of the fee therefrom," and "written notice is promptly given to [McGee]." *See* WIS. SCR 20:1.10(a)(2)(i)-(iii).

The court evaluates the effectiveness of insulating mechanisms on a case-by-case basis. *Nelson*, 823 F. Supp. at 1447. In doing so, the court may consider, *inter alia*, the following factors: the size and structural divisions of the law firm involved, the likelihood of contact between the tainted lawyer and the specific lawyers responsible for the present representation, and the existence of rules which prevent the tainted lawyer from gaining access to relevant files or other information pertaining to the present representation or which prevent the tainted lawyer from sharing in the fees

---

[1] WIS. SCR 20:1.10(a) provides that "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by SCR 20:1.7 or SCR 20:1.9 . . ."

5

derived from the representation. *Id.* In addition, screening arrangements must be timely to avoid disqualification. *Id.* Screens must, therefore, be in place when the potentially disqualifying event occurs, which, depending upon the facts, can be either when the tainted attorney first joins the firm or when the firm agrees to representation raising ethical questions. *Id.* at 1447-48.

In its reply, Quarles sets forth a number of insulating mechanisms that it intends to set in place before K.H. begins as an associate at Quarles: (1) Quarles will instruct everyone at the firm that K.H. will not and cannot be involved in this case and cannot be talked to about this case; (2) Quarles will prohibit K.H. from having access to any of the materials from this case, and he will bring no materials concerning this case with him to Quarles; (3) Quarles will place materials from this case in locking filing cabinets with keys held only by Attorney Matthew Flynn and Attorney Andrew Beilfuss, the two principal Quarles attorneys on this case; (4) Quarles will implement password protection for access to information concerning this case that is in electronic form; and (5) as an associate K.H. will be paid a salary and will have no financial interest in the outcome of this case. These procedures, if instituted in a timely manner, will, in my opinion, adequately overcome imputed disqualification under WIS. SCR 20:1.10.

The court is persuaded that disqualification is unnecessary because of the following additional reasons. Quarles is a large firm with approximately 196 lawyers in the Milwaukee office alone. Moreover, because K.H. will be starting as a patent attorney, it is unlikely that he will have contact with either Mr. Flynn or Mr. Beilfuss. Furthermore, Quarles asserts that it will affirmatively prohibit K.H. from doing any work with either Mr. Flynn or Mr. Beilfuss. Quarles also assures the court that K.H.'s office will be physically separated from Mr. Flynn's and Mr. Beilfuss's offices, which are on the 28th and 26th floors respectively; K.H.'s office will not be on either of those two floors.

6

Case 2:07-cr-00177-CNC   Filed 08/31/07   Page 6 of 13   Document 49

Additionally, Quarles asserts that, although it is confident K.H. will honor the oath he took to become a member of the State Bar of Wisconsin, he will be required to affirm, in writing, under oath, his ethical obligation to keep client confidences secret and not to discuss this case with anyone at Quarles. Quarles will also have an appropriate lawyer affirm under oath that the screening devices will be implemented as provided.

Given the foregoing, this court is satisfied that K.H. is currently under the sole direction and control of FDSW, thereby making WIS. SCR 20:1.10 inapplicable against Quarles in this proceeding. Furthermore, the court finds that Quarles can prevent future disqualification by implementing the above-described screening devices prior to the commencement of K.H's employment at Quarles in September 2007.

**B. Hearst does not have a right of access to McGee's CJA Form 23.**

Hearst seeks to intervene in this criminal proceeding in order to gain access to McGee's financial affidavit, the CJA Form 23, which was used to assess his eligibility for court-appointed counsel. In its motion to intervene, Hearst asserts that both the First Amendment and the common law create a right of access to judicial documents and that the CJA Form 23 is judicial in nature. For the reasons which follow, the court does not find the CJA Form 23 to be a judicial document, but rather an administrative document. Consequently, Hearst has no right of access to McGee's financial affidavit.

To be sure, the press and the public have a qualified First Amendment right of access to judicial proceedings and to judicial documents. *Richard Newspapers v. Virginia*, 448 U.S. 555 (1980). However, not all documents filed with a court are considered judicial documents. *Boston Herald v. Connolly*, 321 F.3d 174, 180 (1st Cir. 2003) (citing *United States v. Gonzales*, 150 F.3d

7

1246, 1255 (10th Cir. 1998)). The threshold inquiry for the court, therefore, is whether the CJA Form 23 is a judicial document.

In *Boston Herald*, the Court of Appeals for the First Circuit considered the same issue that is presented in this case. 321 F.3d at 175-76. In that case, the press sought access to the CJA Form 23 and related financial documents, which the defendant had submitted in seeking appointment of counsel. *Id.* at 175. The court engaged in an exhaustive analysis of the very arguments raised in the instant case, particularly with respect to the issue of whether the CJA eligibility submissions are judicial documents. *See id.* at 178-82. Citing *United States v. Gonzales* in support of its decision, the *Boston Herald* court found that the CJA Form 23 is not a judicial document subject to the right of public access. *Id.* at 180. In *Gonzales*, the Court of Appeals for the Tenth Circuit had explored more generally the entire CJA process used by the federal courts to appoint counsel and found that process to be administrative in nature. *Gonzales,* 150 F.3d at 1250, 1254-55.

Simply stated, this court agrees with the *Boston Herald* and *Gonzales* decisions, holding the CJA Form 23 to be an administrative document not subject to the right of access under either the First Amendment or common law. *See Boston Herald,* 321 F.3d at 180; *see generally Gonzales,* 150 F.3d at 1250.

In *Boston Herald,* the court defined "judicial" documents to be "materials on which a court relies in determining the litigants' substantive rights." 321 F.3d at 189. Under this definition, the CJA Form 23 is clearly not "judicial" because the document contains only financial information unrelated to either the process of adjudicating the defendant's guilt or innocence or to the matter of sentencing. Nor is the CJA Form 23 evidence that a charged crime was committed. To the contrary, the information contained in the CJA Form 23 is completely ancillary to the substantive issues before

8

the court. "[The court] do[es] not think that CJA eligibility documents qualify as [judicial records]. Rather, they are administrative paperwork generated as part of a ministerial process ancillary to the trial." *Id*. at 189.

Further support for the proposition that the CJA Form 23 is not a judicial document is found in the fact that the forms and guidelines for the appointment of counsel under the CJA are all generated by the Administrative Office of the United States Courts under the authority of the Judicial Conference of the United States. Moreover, although this district's Criminal Justice Act Plan states that "[t]he determination of eligibility for representation under the CJA is a judicial function to be performed by a judge after making appropriate inquiries concerning the person's financial condition," *United States District Court for the Eastern District of Wisconsin Criminal Justice Act Plan*, ¶ IV, A, the fact remains that the *administrative/ministerial* function of obtaining financial information from a defendant and generally assisting him or her in completing the Form CJA 23 is performed by the Office of Pretrial Services, not by a judicial officer. *See Boston Herald*, 321 F.3d at 180 ("The forms used to apply for CJA assistance are forms generated by the Administrative Office, and Connolly filed them with the Office of Pre-Trial Services rather than with the clerk of the court or the judge. These facts support a conclusion that the CJA eligibility documents are not essentially judicial in character.")

In support of its motion, Hearst argues that the CJA Form 23 is judicial in nature because (1) the eligibility proceeding potentially occurs within an adversarial setting, (2) the judge plays a crucial role in the outcome, (3) the court relies heavily on the financial affidavit to reach its decision, and (4) the outcome of the proceeding is a substantive determination of the applicant's Sixth Amendment right to counsel. This court finds Hearst's arguments unpersuasive.

9

First of all, the court disagrees with Hearst's description of the eligibility proceedings as taking place in an adversarial setting. To the contrary, eligibility proceedings are decidedly non-adversarial in nature, thereby further suggesting their administrative nature. Indeed, when deciding a defendant's eligibility for court-appointed counsel the court acts *ex parte.*

In making its second and third arguments, i.e., that the CJA Form 23 is a judicial document because the judge plays a crucial role in the outcome and the court relies heavily on the financial affidavit to reach its decision, Hearst fails to recognize that not all documents presented to a court are judicial in nature. *See Boston Herald*, 321 F.3d at 180 (citing *Gonzales,* 150 F.3d at 1255). The mere presence of a document before a judge does not make it judicial in and of itself. After all, courts play administrative as well as judicial roles. *See generally id.* at 181; *Gonzales,* 150 F.3d at 1255.

Finally, Hearst's argument that the CJA Form 23 is a judicial document because the outcome of the proceeding is a substantive determination of the defendant's Sixth Amendment right to counsel, is also flawed. Merely because a decision may affect a constitutional right does not automatically render the decision a judicial one. "Other administrative decisions that effectuate constitutional rights are made outside the judiciary entirely, and create no presumption of access to the documents used in the decision." *Boston Herald*, 321 F.3d at 189-90. "For example, prisoners are constitutionally entitled to medical treatment, but the decision to provide treatment is not thereby 'judicial,' nor do a prisoner's medical records thereby become 'judicial documents.'" *Id.* at 190 (citation omitted).

This court further finds that, because a defendant's disclosures in his financial affidavit affect his Sixth Amendment right to counsel, policy concerns weigh against the disclosure of the CJA Form

10

23. "Just as the grand jury process is the 'classic example' of a government process that would be totally frustrated if conducted openly, so too would the CJA proceedings be frustrated if conducted openly." *Gonzales*, 150 F.3d at 1259 (citation omitted). "One of the "reason[s] grand juries function best in secret is because secrecy 'encourages free and untrammeled disclosures by persons who have information.'" *Id.* (citing *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 219 n.10 (1979)). Without confidence that the information revealed during the CJA application process and contained in documents submitted to the court will not be readily disclosed to the public, a defendant may be reluctant to candidly convey personal financial information to the court.

The concern that a defendant may not be able to candidly complete the CJA Form 23 if he or she is aware that its contents are subject to public disclosure is amplified by the crucial role of the CJA as a vehicle to effectuate a defendant's Sixth Amendment right to adequate legal counsel. Defendants in need of financial assistance for legal counsel should not be forced to choose between, on the one hand, being afforded their Sixth Amendment right to counsel and, on the other hand, not publically disclosing both their own and their spouse's personal financial information–a choice that affluent defendants do not have to make. This particular concern was noted by the court in *Boston Herald* when it observed that:

> the disclosure of a defendant's sensitive personal financial information, which has no bearing on the merits of the criminal trial, could well undermine the judicial process in other ways. In itself, the invasion of privacy inherent in disclosing this data is of concern. This concern is magnified by the crucial role of the CJA as a vehicle to effectuate Sixth Amendment rights for defendants who cannot afford legal representation.
>
> A constitutionally-based right of access to otherwise private personal financial data of one's own and one's family imposes a high price on the exercise of one's constitutional right to obtain counsel if in financial need. Our system of justice cherishes "the principle that defendants are not to be avoidably discriminated against

11

Case 2:07-cr-00177-CNC    Filed 08/31/07    Page 11 of 13    Document 49

> because of their indigency." But a strict disclosure requirement could well discourage eligible defendants from availing themselves of their right to counsel by forcing them to choose between privacy and CJA assistance – a choice that other defendants do not face. The specter of disclosure also might lead defendants (or other sources called upon by the court) to withhold information. Public disclosure of such information may put them at risk of harm to their property or their families if the information is misused by their enemies. There is a prospect of unbalancing the scales in a criminal prosecution if the information in CJA application materials could assist the prosecution, thus raising the specter of claims of denial of Fifth Amendment rights. Such effects tend to disrupt, not enhance, the functioning of the process.

321 F.3d at 188 (citation omitted). Accordingly, contrary to Hearst's assertion that the role of the CJA in effectuating a defendant's Sixth Amendment right to counsel requires the public disclosure of the CJA Form 23, the role of the CJA would actually seem to demand the opposite result. Allowing public disclosure of the CJA Form 23 could discourage some defendants from fully availing themselves of their Sixth Amendment right to counsel.

Finally, Hearst's reliance upon *Seattle Times v. U.S. District Court*, 845 F.2d 1513 (9th Cir. 1988) and *United States v. Kodzis*, 255 F. Supp. 2d 1140 (S.D. Cal. 2003) is misplaced as neither case is precisely on point. In neither case did the court decide that affidavits filed in support of an application for court-appointed counsel were judicial documents that should be made available to the public. "[I]n *Seattle Times*, the court assumed, *without deciding* that affidavits submitted in support of applications for court-appointed counsel are pretrial documents subject to the public's right of access." *United States v. Lexin*, 434 F. Supp. 2d 836, 848-49 (S.D. Cal. 2006). In *Kodzis*, "the court dealt with the defendant's claim that disclosure of his financial information presented to secure court-appointed counsel would violate his Fifth Amendment right against self-incrimination." *Id.* at 849. "[T]he issue of whether the CJA Form 23 and any related financial documents were or were not judicial was not before the court." *Id.*

12

In sum, for the reasons set forth above, this court finds that the CJA Form 23 submitted by McGee in support of his request for court-appointed counsel is not a judicial document, but rather, is an administrative document. And because it is such, Hearst has neither a First Amendment nor common law right of access to such document.

**NOW THEREFORE IT IS ORDERED** that Hearst's motion to intervene be and hereby is **DENIED.**

Your attention is directed to 28 U.S.C. § 636(b)(1)(A), Federal Rules of Criminal Procedure 59(a), and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any order herein or part thereof may be filed within ten days of the date of service of this order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to object in accordance with the rules cited herein waives your right to review.

**SO ORDERED** this 31st day of August 2007, at Milwaukee, Wisconsin.

/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge